1

2

3

4

5

6

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| 7  CURTIS D. WILLIAMS, an individual, | Case No:  C 12-02511 SBA |
| 8                  Plaintiff, | **ORDER** |
| 9         vs. | Docket 46, 47 |
| 10 COUNTY OF ALAMEDA; Lieutenant THOMAS F. MADIGAN, Sergeant MARIO | |
| 11 M. FELIX, Deputies, KEVIN H. ESTEP, BRIAN R. FERNANDEZ, MICHAEL J. | |
| 12 GIAMMALVO, and JUSTIN MIGUEL, members of the Alameda County Sheriff's | |
| 13 Office; and DOES 1-5 inclusive, | |
| 14                  Defendants. | |

15

16     Curtis D. Williams ("Plaintiff") brings the instant civil rights action against the

17 County of Alameda (the "County") and six law enforcement officers[1] alleging various

18 claims for relief under 42 U.S.C. § 1983 arising out of a warrantless entry into his

19 residence.  See Dkt. 44.  The parties are presently before the Court on Defendants' motion

20 to dismiss and motion to strike.  Dkt. 46, 47.  Plaintiff opposes the motion to dismiss, but

21 does not oppose the motion to strike.  Dkt. 48. 49.  Having read and considered the papers

22 filed in connection with these matters and being fully informed, the Court hereby DENIES

23 Defendants' motion to dismiss, and DENIES Defendants' motion to strike.  For the reasons

24 stated below, the Court converts Defendants' unopposed motion to strike into a motion to

25     [1] The Defendants are: the County, Lieutenant Thomas F. Madigan ("Lieutenant Madigan"), Sergeant Mario Felix ("Sergeant Felix"), Deputy Kevin H. Estep ("Deputy
26 Estep"), Deputy Brian R. Fernandez ("Deputy Fernandez"), Deputy Michael J. Giammalvo ("Deputy Giammalvo"), and Deputy Justin Miguel ("Deputy Miguel") (collectively,
27 "Defendants").  The officer Defendants were all employed by the Alameda County Sheriff's Office at the time of the incident giving rise to this suit.  Second Am. Compl.
28 ("SAC") ¶¶ 6-11.

dismiss and DISMISSES Plaintiff's claims for punitive damages against Sergeant Felix and Lieutenant Madigan.  The Court, in its discretion, finds these matters suitable for resolution without oral argument.  See Fed.R.Civ.P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I.     **BACKGROUND**

The following facts, which are taken from the SAC, are accepted as true for purposes of resolving the motions presently before the Court.  On May 8, 2011, Plaintiff and his fiancé, Rickea Butler ("Butler"), were arguing about their daughter's behavior.  SAC ¶ 14.  During their argument, the Alameda County Sheriff's Office was notified by the California Highway Patrol dispatch of a 911 call from a person they thought was a "young boy" who stated that his parents were "about to fight."  Id. ¶ 15.  The Sherriff's Office attempted to return the phone call from the young boy, but there was no response.  Id.

Alameda County Sherriff Deputies were dispatched to the origin of the call, 22322 Center Street in Castro Valley, i.e., Plaintiff's residence.  SAC ¶ 15.  Lieutenant Madigan directed Sergeant Felix and Deputy Estep to head an "Immediate Action Team" composed of themselves and Deputy Fernandez, Deputy Giammalvo, and Deputy Miguel.  Id. ¶ 19.

Approximately 30 minutes after the 911 call, Plaintiff and Butler heard pounding on the front door.  SAC ¶ 16.  As the two of them approached the door, Deputy Estep "smashed in the door and forced it open."  Id.  The officers then entered the residence with handguns and rifles aimed at both Plaintiff and Butler.  Id.  Butler, holding her baby, was forced backwards into the kitchen by Deputy Giammalvo, who was holding an M-4 rifle.  Id. ¶ 20.

Meanwhile, Plaintiff was directed to get on his knees.  SAC ¶ 17.  He complied with this command by putting his hands up and kneeling on the floor.  Id.  Plaintiff was then directed to get on the ground.  Id.  As he was doing so, several deputies slammed him down, using their body weight to pin his right side and arm against a couch and the floor.  Id.  One of the officers yelled at Plaintiff while pressing his firearm against his face, causing Plaintiff to bleed.  Id.  In response to his question: "what did I do?" Plaintiff was told to "shut the Fuck up."  Id.  Plaintiff was then ordered to place his right arm behind his

back, but was unable to do so because of the weight of the officers on top of him.  Id.  ¶ 17.

As a consequence, Plaintiff's arm was "wrenched" behind his back, causing injury to his

shoulder.  Id. ¶¶ 17-18.

Deputy Miguel handcuffed Plaintiff while he was on the ground.  SAC ¶ 18.  After

Plaintiff was escorted to a patrol car, id., the officers interrogated his family members, who

confirmed that there had only been an argument, not a fight, id. ¶ 21.  Butler displayed no

physical signs of an altercation, and the home showed no indication of a disturbance

outside of the conduct of the officers.  Id.

Plaintiff was taken to Valley Care Hospital in Pleasanton, but declined treatment.

SAC ¶ 22.  He was then taken to Santa Rita County jail and booked.  Id.  Plaintiff remained

in custody overnight and was released in the morning.  Id.  Upon his release, Plaintiff

returned to the hospital.  Id.  He was subsequently charged with a violation of California

Penal Code § 148(a)(1) - resisting arrest, and California Penal Code § 273a(b) - child

endangerment.  Id. ¶ 23.  However, after several months and multiple court appearances,

the charges against Plaintiff were dropped in the interests of justice.  Id. ¶¶ 23-24.

On May 16, 2012, Plaintiff commenced the instant action.  See Compl., Dkt. 1.  On

May 30, 2013, Plaintiff filed a SAC alleging six claims for relief under § 1983: (1)

unlawful entry and damage to property; (2) unnecessary force; (3) violation of equal

protection; (4) unlawful arrest; (5) malicious prosecution; and (6) municipal liability under

Monell v. Department of Social Services, 436 U.S. 658 (1978).  Dkt. 44.  The parties are

presently before the Court on Defendants' motion to dismiss and motion to strike.  Dkt. 46,

47.

## II.   **LEGAL STANDARD**

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a

cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal

theory."  Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).  Rule 8 of the Federal

Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the

claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  "To survive a

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 563 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

In assessing the sufficiency of the pleadings, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).  The court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 563 U.S. at 678.  "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." Id. at 679.  Those facts must be sufficient to push the claims "across the line from conceivable to plausible." Id. at 683.  Ultimately, the allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (internal quotation marks and citation omitted).

Where a complaint or claim is dismissed, "[l]eave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts." Knappenberger v. City of Phoenix, 566 F.3d 936, 942 (9th Cir. 2009).  Leave to amend is not required where permitting further amendment to the pleadings would be futile.  See Deveraturda v. Globe Aviation Sec. Servs., 454 F.3d 1043, 1049-1050 (9th Cir. 2006).

III.   **DISCUSSION**

   A.   **Motion to Dismiss**

   As a preliminary matter, the Court notes that Defendants have submitted portions of Plaintiff's deposition testimony in support of their motion to dismiss. "As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion."[2]  Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation marks and citation omitted).  A motion to dismiss made pursuant to Rule 12(b)(6) must be treated as a motion for summary judgment under Rule 56 if either party to the motion to dismiss submits materials outside the pleadings in support of, or opposition to, the motion, and if the court relies on those materials.  Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996).  However, the Court has discretion either to consider or reject such evidence.  See Swedberg v. Marotzke, 339 F.3d 1139, 1143-1146 (9th Cir. 2003) (where a district court does not rely on the materials submitted outside the pleadings, a motion to dismiss need not be converted into a motion for summary judgment).  If a court converts a motion to dismiss into a motion for summary judgment, the court must give the parties notice and a reasonable opportunity to supplement the record.  Bank Melli Iran v. Pahlavi, 58 F.3d 1406, 1408 (9th Cir. 1995).

   Here, the evidence submitted by Defendants is not subject to judicial notice or otherwise appropriate for the Court to consider without converting Defendants' motion to dismiss into a motion for summary judgment.  Given the relatively early stage of this litigation, the Court exercises its discretion and declines to convert Defendants' motion to dismiss into a motion for summary judgment.  The Court finds that the evidence submitted by Defendants is more appropriately considered after the parties have had an adequate opportunity to fully develop the factual record.  Neither party has suggested that the factual

---

   [2] There are, however, exceptions to this rule.  The Court may consider a limited set of documents without converting a Rule 12(b)(6) motion into a motion for summary judgment: documents attached to the complaint, documents incorporated by reference in the complaint, or matters that can be judicially noticed.  See United States v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003).

record is sufficiently developed such that a motion for summary judgment is appropriate at this stage of the proceedings.

Additionally, the Court will not consider any facts in the first amended complaint ("FAC") that are not pled in the SAC.  In their motion papers, Defendants rely on allegations in the FAC that are not present in the SAC to support their arguments for dismissal.  However, it is well-established that an amended pleading supersedes the original pleading and renders it of no legal effect, unless the amended complaint incorporates by reference portions of the prior pleading.[3]  See Doe v. Unocal Corp., 27 F.Supp.2d 1174, 1180 (C.D. Cal. 2010); William Schwarzer, et al., Federal Civil Procedure Before Trial, § 8:1550 (2010); see also Kelley v. Crosfield Catalysts, 135 F.3d 1202, 1204-1205 (7th Cir. 1998) (refusing, on a Rule 12(b)(6) motion, to consider facts in an original complaint not present in an amended complaint); Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967) ("The amended complaint supersedes the original, the latter being treated thereafter as non-existent.") (citing cases), overruled in part by Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012).  While prior pleadings may be *admissible in evidence* against the pleader, see William Schwarzer, et al., Federal Civil Procedure Before Trial, § 8:1553 (emphasis added), the Court is bound to accept as true allegations in the operative pleading on a motion to dismiss, id. at § 9:6, and generally cannot consider evidence outside the pleadings without converting a motion to dismiss into a motion for summary judgment.  Id. at § 9:233 (footnote added).

### 1.   42 U.S.C. § 1983

Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States.'" Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred.  See Graham v. Connor, 490 U.S. 386, 393-

---

[3] The SAC does not incorporate by reference portions of the FAC.

394 (1989).  To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda County, 811 F.2d 1243, 1245 (9th Cir. 1987).

### 2.   Unlawful Entry Claim

Plaintiff's first claim for relief alleges that Sergeant Felix, Deputy Estep, Deputy Fernandez, Deputy Giammalvo, and Deputy Miguel violated his Fourth Amendment rights by entering into his residence without a warrant, probable cause, exigent circumstances, or consent.  SAC ¶ 26.  Defendants contend that dismissal of this claim is appropriate because the SAC only contains vague and conclusory allegations. Defs.' Mot. at 4.  In addition, Defendants contend that dismissal of this claim is appropriate because Plaintiff has not pled facts showing that "Defendants did not have probable cause and that there were no exigent circumstances." Id.  Defendants also argue that, even taking Plaintiff's vague and conclusory allegations as true, this claim fails because "it is reasonable to believe that (1) Defendants had probable cause to enter, and (2) Defendants were faced with exigent circumstances. . . ." Id. at 5.  Finally, Defendants contend that dismissal of this claim is appropriate because the officers are entitled to qualified immunity.  Id. at 5-6.

### a.   Failure to State a Claim

The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ."  U.S. Const. amend. IV.  "It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable."  Payton v. New York, 445 U.S. 573, 586 (1980).  There are two general exceptions to the warrant requirement for home searches: exigency and emergency.  United States v. Martinez, 406 F.3d 1160, 1164 (9th Cir. 2005).  "These exceptions are 'narrow' and their boundaries are 'rigorously guarded' to prevent any expansion that would unduly interfere with the sanctity of the home."  Hopkins v. Bonvicino, 573 F.3d 752, 763 (9th Cir.

2009).  "[W]arrants are generally required to search a person's home or his person unless the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment."  <u>Brigham City, Utah v. Stuart</u>, 547 U.S. 398, 403 (2006) (quotation marks omitted).

"Under the exigency doctrine, a warrantless search of a home is permitted if there is probable cause to believe that contraband or evidence of a crime will be found at the premises and that exigent circumstances exist."  <u>Martinez</u>, 406 F.3d at 1164; <u>see</u> <u>United States v. Johnson</u>, 256 F.3d 895, 905 (9th Cir. 2009) ("[W]hen the government relies on the exigent circumstances exception, it still must satisfy two requirements: first, the government must prove that the officer had probable cause to search the house; and second, the government must prove that exigent circumstances justified the warrantless intrusion.").  As a general rule, exigent circumstances are defined as those circumstances that would cause a reasonable person to believe that entry was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts.  <u>Martinez</u>, 406 F.3d at 1164; <u>see</u> <u>Brigham City, Utah</u>, 547 U.S. at 403 ("One exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury.").[4]

---

[4] Three requirements must be satisfied in order to justify a warrantless search under the emergency doctrine: (1) the police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property; (2) the search must not be primarily motivated by intent to arrest and seize evidence; (3) there must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched.  <u>United States v. Stafford</u>, 416 F.3d 1068, 1073-1074 (9th Cir. 2005).  Defendants do not move for dismissal under the emergency doctrine in their moving papers.  Instead, Defendants argue for the first time in their reply brief that dismissal is appropriate under this doctrine.  Because this argument was not raised in Defendants' opening brief, the Court disregards it.  <u>See</u> <u>Zango, Inc. v. Kaspersky Lab, Inc.</u>, 568 F.3d 1169, 1177 n. 8 (9th Cir. 2009) ("arguments not raised by a party in an opening brief are waived"); <u>Zamani v. Carnes</u>, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").  The Court does not consider arguments that are "not specifically and distinctly argued in [the] opening brief[.]"  <u>Dream Games of Ariz., Inc. v. PC Onsite</u>, 561 F.3d 983, 995 (9th Cir. 2009).

To prove that exigent circumstances existed, the Defendants cannot rely on "speculation about what may or might have happened."  See United States v. Howard, 828 F.2d 552, 555 (9th Cir. 1987).  Instead, Defendants must point to "specific and articulable" facts which, taken together with rational inferences, support the warrantless intrusion.  Id. A court, in turn, must view the exigencies "from the totality of circumstances known to the officers at the time of the warrantless intrusion."  Id.  In light of these circumstances, the court must determine whether an officer's decision to enter without a warrant was "objectively reasonable."  U.S. v. Brooks, 367 F.3d 1128, 1136 (9th Cir. 2004); see Brigham City, Utah, 547 U.S. at 403, 406 (concluding that police may enter a home without a warrant when they have an objectively reasonable basis for believing that an occupant is seriously injured or imminently threatened with such injury).

Here, viewing the allegations in the SAC in the light most favorable to Plaintiff, the Court finds that he has alleged sufficient facts to withstand Defendants' motion to dismiss. Plaintiff has alleged facts establishing that the search of his residence was presumptively unreasonable under the Fourth Amendment.  The SAC alleges that Deputy Estep "smashed in [Plaintiff's] door and forced it open" without a warrant, probable cause, exigent circumstances or consent, approximately 30 minutes after a young boy called from Plaintiff's residence stating that his parents were "about to fight."  SAC ¶¶ 15-16, 26.

Contrary to Defendants' contention, the facts alleged in the SAC do not demonstrate that the officer Defendants had probable cause to search Plaintiff's residence, and that exigent circumstances justified the warrantless intrusion.  Defendants have not cited any specific and articulable facts alleged in the SAC supporting their position.  For instance, Defendants have not cited any allegations establishing that the officer Defendants had an objectively reasonable basis for believing that a person inside the residence was seriously injured or threatened with such injury.  Other than the 911 call from a young boy alerting police to a potential for domestic abuse, and the failure of the boy to answer a return phone call by the Sheriff's Office, there are no facts in the SAC creating an exigency justifying entry into Plaintiff's residence without a warrant.  While the Ninth Circuit has recognized

that domestic violence cases present a unique set of dangers[5] that may, at times, "override considerations of privacy," such cases do not create a per se exigent need for a warrantless entry; rather, the totality of the circumstances must be considered to determine whether exigent circumstances relieved the officers of the customary need for a warrant prior to entry.  U.S. v. Black, 482 F.3d 1035, 1040 (9th Cir. 2007); see Brooks, 367 F.3d at 1136 (finding that the exigency doctrine allowed warrantless entry where a 911 call alerted police to a perceived domestic abuse and there were corroborating facts known to the officer disclosing danger and creating exigency).[6]  Defendants have not cited any Ninth Circuit authority demonstrating that dismissal is appropriate based on the facts alleged in the SAC.  Accordingly, Defendants' motion to dismiss Plaintiff's unlawful entry claim for failure to state a claim is DENIED.

### b.    Qualified Immunity

Defendants contend that they are insulated from liability for their warrantless entry under the doctrine of qualified immunity.  Defs.' Mot. at 5.  "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their

---

[5] The Ninth Circuit has observed that "[t]he volatility of situations involving domestic violence" makes them particularly dangerous.  Martinez, 406 F.3d at 1164.  "When officers respond to a domestic abuse call, they understand that violence may be lurking and explode with little warning.  Indeed, more officers are killed or injured on domestic violence calls than on any other type of call."  Id.  In light of the danger that domestic disputes pose to law enforcement officers, the Ninth Circuit has recognized that "'the exigencies of domestic abuse cases present dangers that . . . may override considerations of privacy' where the alleged Fourth Amendment violation was a warrantless entry into a residence for the purpose of intervening in a domestic dispute, protecting the potential victim, and gaining control over a volatile situation that could endanger the officers."  Mattos v. Agarano, 661 F.3d 433, 450 (9th Cir. 2011).

[6] In Brooks, an officer was dispatched to a hotel room after a guest called 911 to report "sounds of a woman being beaten" in the room next door.  Brooks, 367 F.3d at 1130.  Upon his arrival at the hotel, the officer spoke with the guest that placed the 911 call who confirmed that a woman was in the hotel room next door.  Id. at 1130, 1135, n. 8.  When the officer knocked on the door, the defendant answered and confirmed that there had been a woman in the room, that loud fighting had occurred, and that the woman was now in the bathroom.  Id. at 1130, 1135.  The officer could not see or hear the woman, but noticed that the room was in "total disarray."  Id.  Under these circumstances the Ninth Circuit held that exigent circumstances supported the officer's warrantless entry into the hotel because the officer had an objectively reasonable belief that a woman might be injured and entry was necessary to prevent physical harm.  Id. at 1135.

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Stanton v. Sims, 134 S.Ct. 3, 4 (2013) (quotation marks omitted); Pearson v. Callahan, 555 U.S. 223, 231 (2009). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." Stanton, 134 S.Ct. at 5 (quotation marks omitted). "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." Brosseau v. Haugen, 543 U.S. 194, 198 (2004).

An officer is entitled to qualified immunity unless (1) the facts that a plaintiff has alleged make out a violation of a constitutional right, and (2) the right was "clearly established at the time of the alleged misconduct. Pearson, 555 U.S. at 232. If the answer to the first prong is "no," then the inquiry ends and the plaintiff cannot prevail; if the answer is "yes," the court must address the second prong of the analysis. See Saucier v. Katz, 533 U.S. 194, 201 (2001). Under the second prong, the court determines "whether the right was clearly established," and applies an "objective but fact-specific inquiry." Inouye v. Kemna, 504 F.3d 705, 712 (9th Cir. 2007); see Saucier, 533 U.S. at 202. It is not enough that the general rule is established. Id. The critical question is whether "the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violates the right." Saucier, 533 U.S. at 202. "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. The court's "task is to determine whether the preexisting law provided the defendants with fair warning that their conduct was unlawful." Elliot-Park v. Manglona, 592 F.3d 1003, 1008 (9th Cir. 2010).

Whether a right is clearly established must be "undertaken in light of the specific context of the case, not as a broad general proposition." Saucier, 533 U.S. at 201. In making this determination, the court considers the state of the law at the time of the alleged

1  violation, but it is unnecessary for the precise conduct in question to have been previously

2  held unlawful.  See Inouye, 504 F.3d at 712.  Further, the court considers the "information

3  possessed" by the officer at the time of his conduct.  See Hunter v. Bryant, 502 U.S. 224,

4  227 (1991).  An officer will receive qualified immunity if a reasonable officer could have

5  believed the action to be lawful, in light of clearly established law and the information the

6  officer possessed.  Id.  Even an officer who reasonably, but mistakenly, believed that his

7  conduct did not violate a clearly established constitutional right will receive qualified

8  immunity.  See Saucier, 533 U.S. at 205-206.

9         Here, the Court has found that the SAC alleges sufficient facts to state a violation of

10  Plaintiff's constitutional right to be free from an unreasonable search of his residence under

11  the Fourth Amendment.  As noted above, it is well-established that, absent exigent

12  circumstances or the applicability of the emergency doctrine, the Fourth Amendment

13  requires that a search warrant be obtained prior to entering a private residence.  Defendants

14  have not cited any allegations in the SAC demonstrating that a reasonable police officer, in

15  the officer Defendants' position, could have believed that the Fourth Amendment permitted

16  them to enter Plaintiff's residence without a warrant.  At the time of the entry into

17  Plaintiff's residence, a reasonable officer, possessing knowledge of the facts alleged in the

18  SAC, would have known that he or she lacked reasonable grounds to believe that exigent

19  circumstances existed to justify a warrantless entry.  The law existing at the time of the

20  warrantless entry provided the officer Defendants with fair warning that their conduct was

21  unlawful.  The SAC alleges that a young boy placed a 911 call to the police from Plaintiff's

22  residence stating that his parents were "about to fight," a return phone call from the

23  Sheriff's Office was not answered, and that, approximately 30 minutes later, Deputy Estep

24  "smashed in the door [to Plaintiff's residence] and forced it open."  The SAC does not

25  allege any facts known to the officer Defendants disclosing danger and creating an

26  exigency justifying a warrantless entry.  Accordingly, Defendants' motion to dismiss

27  Plaintiff's unlawful entry claim on qualified immunity grounds is DENIED.

28  ///

### 3.      Equal Protection Claim

Plaintiff's third claim for relief alleges that the officer Defendants arrested him for child endangerment solely because he is an African-American male in violation of his Fourteenth Amendment rights.  SAC ¶ 35.  Plaintiff alleges that, "[d]espite specific knowledge" that his fiancé "had engaged in the same conduct" as he did, the officer Defendants arrested him but not her in violation of his equal protection rights.  Id. Defendants contend that dismissal of this claim is appropriate because Plaintiff has failed to adequately plead a "class-of-one" equal protection claim; specifically, they argue that Plaintiff has not pled sufficient facts to establish that he was treated differently from others similarly situated.  Defs.' Mot. at 7-8.

The Equal Protection Clause guarantees, "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws," U.S. Const. amend. XIV, § 1, which is essentially a direction that all persons similarly situated should be treated alike.  City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985); Serrano v. Francis, 345 F.3d 1071, 1081 (9th Cir. 2003).  The equal protection guarantee protects not only groups, but individuals who would constitute a "class-of-one."  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  Here, it is undisputed that Plaintiff's equal protection claim is a "class of one claim."  According to Plaintiff, the officer Defendants intentionally treated him differently from another similarly situated person - his fiancé.  Pl.'s Opp. at 8.

An equal protection claim based on a "class of one," which does not depend on a suspect classification such as race or gender, requires a plaintiff to allege that he has been (1) "intentionally treated differently from others similarly situated" and (2) "there is no rational basis for the difference in treatment."  Village of Willowbrook, 528 U.S. at 564; see also Gerhart v. Lake County, Mont., 637 F.3d 1013, 1022 (9th Cir. 2011).  "Such circumstances state an Equal Protection claim because, if a state actor classifies irrationally, the size of the group affected is constitutionally irrelevant."  Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008).  The rationale is that "[w]hen those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at least a

1   rational reason for the difference, to assure that all persons subject to legislation or

2   regulation are indeed being 'treated alike, under like circumstances and conditions.' "

3   Engquist v. Oregon Dep't of Agric., 553 U.S. 591, 602 (2008).

4        Class-of-one equal protection claims are not cognizable with respect to all state

5   decisions.  In Engquist, the Supreme Court held that "the class-of-one theory of equal

6   protection has no application in the public employment context" because the "class of one"

7   theory is a "poor fit" in a context involving discretionary decision-making.  Engquist, 553

8   U.S. at 605, 607.  In that case, a former state employee brought a class-of-one equal

9   protection claim on the ground that she had been fired for "arbitrary, vindictive, and

10  malicious reasons."  Id. at 594-595.  The Court found that employment decision-making

11  stands in contrast to legislative or regulatory classifications, where "the existence of a clear

12  standard against which departures, even for a single plaintiff, [can] be readily assessed."

13  Id. at 602.  The Supreme Court explained:

14       There are some forms of state action . . . which by their nature involve
         discretionary decisionmaking based on a vast array of subjective,
15       individualized assessments.  In such cases the rule that people should be
         'treated alike, under like circumstances and conditions' is not violated when
16       one person is treated differently from others, because treating like individuals
         differently is an accepted consequence of the discretion granted.  In such
17       situations, allowing a challenge based on the arbitrary singling out of a
         particular person would undermine the very discretion that such state officials
18       are entrusted to exercise.

19  Id. at 603.  The Supreme Court concluded that class-of-one equal protection claims are

20  prohibited in the employment context because "employment decisions are quite often

21  subjective and individualized, resting on a wide array of factors that are difficult to

22  articulate and quantify."  Id. at 604.

23        Since Engquist, some courts have held that class-of-one claims cannot be brought in

24  the law enforcement context.  See, e.g., Flowers v. City of Minneapolis, 558 F.3d 794, 799-

25  800 (8th Cir. 2009) ("[W]hile a police officer's investigative decisions remain subject to

26  traditional class-based equal protection analysis, they may not be attacked in a class-of-one

27  equal protection claim."); United States v. Moore, 543 F.3d 891, 901 (7th Cir. 2008)

28  (holding that class-of-one claims cannot challenge the exercise of prosecutorial discretion).

In contrast, the Seventh Circuit has held that a plaintiff stated a class-of-one equal protection claim against police officers that repeatedly arrested him solely for reasons of personal animus.  See Hanes v. Zurick, 578 F.3d 491, 492 (7th Cir. 2009).  The parties have not cited, and the Court is not aware of, any Ninth Circuit authority addressing whether a plaintiff can bring a class-of-one equal protection claim against police officers based on their law enforcement decision-making.

Here, Defendants do not argue that Plaintiff cannot bring a class-of-one claim as a matter of law under Engquist.[7]  Rather, Defendants argue that Plaintiff has failed to plead sufficient facts to establish that he was treated differently from others similarly situated.  The Court disagrees.  Plaintiff has identified his fiancé as an individual whom he can be compared to.  SAC ¶ 35.  Plaintiff's equal protection claim is predicated on his assertion that he was treated differently than his fiancé (i.e., he was arrested) even though he and his fiancé were engaged in the same behavior that gave rise to his arrest (i.e., arguing about their child's behavior).  Id.  Defendants have not cited any controlling authority holding that Plaintiff's allegations are insufficient to survive a motion to dismiss.  Nor have Defendants provided persuasive legal analysis demonstrating that dismissal of Plaintiff's equal protection claim is warranted.  Accordingly, Defendants' motion to dismiss Plaintiff's equal protection claim is DENIED.

### 4.     Unlawful Arrest Claim

Plaintiff's fourth claim for relief alleges that Sergeant Felix, Deputy Estep, Deputy Fernandez, Deputy Giammalvo, and Deputy Miguel arrested him without probable cause in violation of his Fourth Amendment rights.  SAC ¶ 39.  Defendants contend that dismissal of this claim is appropriate because Plaintiff has failed to allege facts which plausibly suggest that his arrest was unlawful, that is, without probable cause.  Defs.' Mot. at 8-9.  In addition, Defendants argue they are entitled to qualified immunity.  Id. at 9.

---

[7] As such, the Court does not reach the issue of whether Plaintiff's equal protection claim fails as a matter of law on the ground that he has failed to state a cognizable legal theory.

### a.      Sufficiency of the Pleading

A law enforcement officer must have probable cause to make a warrantless arrest. See Tennessee v. Garner, 471 U.S. 1, 7 (1985).  "A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification."  Dubner v. City and Cnty. of San Francisco, 266 F.3d 959, 964 (9th Cir. 2001).  An arrest is supported by probable cause if, under the totality of the circumstances known to the arresting officer, a prudent person would have concluded that there was a fair probability that the defendant had committed a crime.  Luchtel v. Hagemann, 623 F.3d 975, 980 (9th Cir. 2010); see also Ramirez v. City of Buena Park, 560 F.3d 1012, 1023 (9th Cir. 2009).  The inquiry is not whether the suspect actually committed the offense, but rather whether a reasonable officer, based on information known to him/her at the time, had probable cause to think that the suspect could have committed the offense. See Blankenhorn v. City of Orange, 485 F.3d 463, 475 (9th Cir. 2007).  A plaintiff can make a prima facie case of unlawful arrest simply by showing that the arrest was conducted without a valid warrant.  Dubner, 266 F.3d at 964.

Here, Plaintiff has alleged sufficient facts to state a prima facie case for false arrest in violation of his Fourth Amendment rights.  The SAC alleges that Plaintiff was arrested inside his residence without a warrant and without probable cause approximately 30 minutes after a young boy called from his residence stating that his parents were "about to fight."  SAC ¶¶ 15-18, 39.  There are no allegations in the SAC demonstrating that the officer Defendants could have believed, based on the information known to them, that Plaintiff had committed a crime or was committing a crime at the time they entered his residence without a warrant and arrested him.  Accordingly, Defendants' motion to dismiss Plaintiff's unlawful arrest claim for failure to state a claim is DENIED.

### b.      Qualified Immunity

Defendants contend that they are insulated from liability under the doctrine of qualified immunity for their warrantless arrest of Plaintiff.  Defs.' Opp. at 9-10. Specifically, Defendants argue that they are entitled to qualified immunity because, under

1  the totality of the circumstances, the officer Defendants had probable cause to believe that

2  Plaintiff committed the crime of child endangerment.  Id. at 10.  According to Defendants,

3  the facts alleged in the SAC "are sufficient for the Defendants to believe that Plaintiff was

4  inflicting mental suffering on his fiancé's children by willfully fighting with their mother in

5  their presence."  Id.  The Court disagrees.

6  　　　Having determined that Plaintiff has pled sufficient facts to state a cognizable claim

7  for false arrest in violation of the Fourth Amendment, the issue is whether, at the time of

8  the violation, the constitutional right was "clearly established."  Saucier, 533 U.S. at 201.

9  "The relevant, dispositive inquiry in determining whether a right is clearly established is

10  whether it would be clear to a reasonable officer that his conduct was unlawful in the

11  situation he confronted."  Id. at 202.  Other than the 911 call alerting the police that

12  Plaintiff and his fiancé were "about to fight," and the failure of the 911 caller to answer a

13  return phone call from the Sheriff's office, there are no facts in the SAC that would lead a

14  reasonable officer to believe that probable cause existed to arrest Plaintiff for any crime,

15  including child endangerment.  Based on the facts alleged in the SAC, a reasonable officer

16  would have known that a warrantless arrest of Plaintiff was unlawful.  Accordingly, the

17  officer Defendants are not entitled to qualified immunity for the warrantless arrest of

18  Plaintiff.  Therefore, Defendants' motion to dismiss Plaintiff's unlawful arrest claim on

19  qualified immunity grounds is DENIED.

20  　　　　　　**5.   Malicious Prosecution Claim**

21  　　　Plaintiff's fifth claim for relief alleges that Sergeant Felix, Deputy Estep, Deputy

22  Fernandez, Deputy Giammalvo, and Deputy Miguel are liable for malicious prosecution for

23  supplying the prosecutor with false information and leading the prosecutor to maintain

24  charges against him without a reasonable basis.  SAC ¶ 44.  Defendants contend that the

25  officer Defendants are "immune" from liability for this claim on two grounds: (1) Plaintiff

26  has failed to allege sufficient facts to rebut the presumption that the prosecutor exercised

27  independent judgment in deciding to bring charges against him; and (2) the officer

28

1   Defendants are immune from malicious prosecution claims under California Government

2   Code § 821.6.  Defs.' Mot. at 11-12.

3        "[A] claim for malicious prosecution is not generally cognizable under . . . § 1983 if

4   process is available within the state judicial system to provide a remedy."  Usher v. City of

5   Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).  The exception is "when a malicious

6   prosecution is conducted with the intent to deprive a person of equal protection of the laws

7   or is otherwise intended to subject a person to denial of constitutional rights."  Id. at 562

8   (quotation marks omitted).

9        Under § 1983, a "criminal defendant may maintain a malicious prosecution claim

10  not only against prosecutors but also against others—including police officers and

11  investigators—who wrongfully caused his prosecution."  Smith v. Almada, 640 F.3d 931,

12  938 (9th Cir. 2011); see Awabdy v. City of Adelanto, 368 F.3d 1062, 1066 (9th Cir. 2004).

13  To maintain a § 1983 action for malicious prosecution, a "plaintiff must show that the

14  defendants prosecuted her with malice and without probable cause, and that they did so for

15  the purpose of denying her a specific constitutional right."  Smith, 640 F.3d at 938;

16  Awabdy, 368 F.3d at 1066.[8]  Further, "[a]n individual seeking to bring a malicious

17  prosecution claim must generally establish that the prior proceedings terminated in such a

18  manner as to indicate his innocence."  Awabdy, 368 F.3d at 1068.  To constitute a favorable

19  termination, "a dismissal in the interests of justice [must] reflect[ ] the opinion of the

20  prosecuting party or the court that the action lacked merit or would result in a decision in

21  favor of the defendant."  Id.

22        The decision to file a criminal complaint is presumed to result from an independent

23  determination on the part of the prosecutor, and thus, precludes liability for those who

24  participated in the investigation or filed a report that resulted in the initiation of

25  _____

26       [8] The specific constitutional right at issue may include, but is not limited to, a right
     secured by the Fourth Amendment.  See Awabdy, 368 F.3d at 1069-1070; see Galbraith v.
     County of Santa Clara, 307 F.3d 1119, 1126 (9th Cir. 2002) (holding that "a coroner's
27   reckless or intentional falsification of an autopsy report that plays a material role in the
     false arrest and prosecution of an individual can support a claim under . . . § 1983 and the
28   Fourth Amendment").

proceedings.  Awabdy, 368 F.3d at 1067.  However, the presumption of prosecutorial independence does not preclude a § 1983 claim against state or local officials who improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings.  Id.

Here, the Defendants have not demonstrated that dismissal of Plaintiff's malicious prosecution claim is warranted on the ground that Plaintiff has failed to allege sufficient facts to rebut the presumption that the prosecutor exercised independent judgment in deciding to bring charges against him.  As an initial matter, the Court notes that the presumption of prosecutorial independent judgment is an evidentiary presumption that is applicable at the summary judgment stage to direct the order of proof; "it is not a pleading requirement to be applied to a motion to dismiss, before discovery has taken place." Galbraith, 307 F.3d at 1126.  Moreover, although devoid of specific details about the false information that the officer Defendants provided to the prosecutor, the allegations in the SAC are sufficient to withstand Defendants' motion to dismiss.[9]  The allegations give Defendants fair notice of what the claim is and the grounds upon which it rests.  See Erickson v. Pardus, 551 U.S. 89, 93 (2007) (holding that under Rule 8(a), "[s]pecific facts are not necessary; the statement need only give the defendant[s] fair notice of what . . . the claim is and the grounds upon which it rests.")

Plaintiff has pled facts that, if established, rebut the presumption of prosecutorial independence.  The SAC alleges that Sergeant Felix, Deputy Estep, Deputy Fernandez, Deputy Giammalvo, and Deputy Miguel violated Plaintiff's Fourth Amendment rights by "arresting [him] without probable cause, providing the prosecutor with false information as to the events in question," and by "causing the prosecutor to maintain a prosecution against

---

[9] See Usher, 828 F.2d at 562 (finding allegations sufficient to state a malicious prosecution claim under § 1983 where plaintiff alleged that the defendants illegally arrested him, contrived charges to justify the arrest, submitted false police reports, initiated his criminal prosecution in bad faith, called him racially derogatory names, and the criminal proceeding terminated in his favor).

1  [him] for cruelty to child by endangering health[,] and [for] resisting, obstructing and

2  delaying a peace officer knowing there was not even a reasonable basis for bringing said

3  charges. . . ."  SAC ¶ 44.  The SAC further alleges that Plaintiff was charged with these

4  violations "based solely on the information supplied by defendants," id. ¶ 23, and that the

5  officer Defendants "subjected [him] to [constitutional] deprivations by malice and a

6  reckless and conscious disregard of his rights," id. ¶ 45.  Defendants, for their part, have not

7  cited any authority holding that the facts are insufficient to survive a motion to dismiss.

8  Finally, as for Defendants' contention that Plaintiff's § 1983 malicious prosecution

9  claim is subject to dismissal on the ground that it is barred by California Government Code

10  § 821.6,[10] the Court rejects this contention.  See Foster v. Berkeley Police Dept., 2011 WL

11  5861266, at *10 n. 6 (N.D. Cal. 2011) (noting that a claim of malicious prosecution under §

12  1983 is not barred by § 821.6).  Defendants have not cited any controlling authority holding

13  that a § 1983 malicious prosecution claim is barred by state immunity.  Accordingly, for the

14  reasons set forth above, Defendants motion to dismiss Plaintiff's malicious prosecution

15  claim is DENIED.

16  **6.    Monell Claim**

17  Plaintiff's sixth claim for relief alleges that the County failed, with deliberate

18  indifference, to properly and adequately hire, train, retain, supervise, and discipline its law

19  enforcement officers to prevent the violation of Plaintiff's constitutional rights.  SAC ¶ 49.

20  Defendants contend that dismissal of this claim is appropriate because Plaintiff has failed to

21  allege sufficient facts to state a cognizable claim for municipal liability.  Def.s' Mot. at 13-

22  15.

23  A local government may be liable under § 1983 if the governmental body itself

24  "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such

25  deprivation.  Monell, 436 U.S. at 692.  Because there is no *respondeat superior* liability

26  _____

27  [10] Section 821.6 provides that "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of employment, even if he acts maliciously and without probable cause."  Cal. Gov't Code §

28  821.6.

under § 1983, "Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." Id. at 691.

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." Connick v. Thompson, 131 S.Ct. 1350, 1359 (2011). "To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.' " Id. (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989)). Deliberate indifference is established when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." Clouthier v. County of Contra Costa, 591 F.3d 1232, 1249 (9th Cir. 2010).

"[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." Connick, 131 S.Ct. at 1360. "The city's 'policy of inaction' in light of notice that its program will cause constitutional violations 'is the functional equivalent of a decision by the city itself to violate the Constitution.' " Id.

"A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Connick, 131 S.Ct. at 1360. "Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the deliberate indifference— necessary to trigger municipal liability." Id. (internal quotation marks omitted). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of

1  constitutional rights." Id.  In City of Canton, however, the Court did not foreclose the

2  possibility that, "in a narrow range of circumstances," the unconstitutional consequences of

3  failing to train could be "so patently obvious" that a municipality could be liable under §

4  1983 without proof of a pre-existing pattern of violations. Connick, 131 S.Ct. at 1361.[11]

5  These "circumstances" generally involve incidents arising from a total lack of training, not

6  simply an assertion that a municipal employee was not trained about "the specific scenario

7  related to the violation." Connick, 131 S.Ct. at 1363.

8      In the Ninth Circuit, a plaintiff alleging a Monell claim based on inadequate training

9  must show: (1) that the plaintiff was deprived of a constitutional right, (2) the municipality

10  had a training policy that "amounts to deliberate indifference to the [constitutional] rights

11  of the persons' with whom [its police officers] are likely to come into contact;" and (3) that

12  the constitutional injury would have been avoided had the municipality properly trained

13  those officers. Blankenhorn v. City of Orange, 485 F.3d 463, 484 (9th Cir. 2007).

14      As an initial matter, the Court notes that Plaintiff's opposition contains no argument

15  in response to Defendant's motion to dismiss his Monell claim.  Instead, Plaintiff directs

16  the Court to the arguments he made in opposition to Defendants' motion to dismiss the

17  FAC.  Pl.'s Opp. at 15.  Plaintiff states that because the arguments are "identical," he

18  "relies on [his] prior opposition." Id.  It is wholly improper for Plaintiff to incorporate by

19  reference legal arguments made in a brief filed in connection with a motion that is not

20  before the Court.  The Court refuses to allow Plaintiff to engage in such conduct as it would

21  provide an effective means of circumventing page limits on briefs set forth in the Civil

22  Local Rules and this Court's Civil Standing Orders.  Therefore, the Court will not consider

23  the arguments that Plaintiff improperly seeks to incorporate by reference.  This Court only

24  ─────────────────────

25  [11] The rare situation was described in City of Canton through "the hypothetical example of a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional

26  limitation on the use of deadly force." Connick, 131 S.Ct. at 1361.  The Court's hypothesis was premised on the assumption that the municipality had decided not to train its officers

27  about the constitutional limits of the use of force. Id.  Under such circumstances, the highly predictable consequence that deadly force could be misused in violation of citizens' rights

28  could be deemed so obvious as to reflect deliberate indifference. Id.

considers arguments that are specifically and distinctively raised by the parties in their briefs.  See Indep. Towers of Wash., 350 F.3d 925, 929 (9th Cir. 2003) (noting that courts need not consider arguments that were not actually made in a party's brief).

The above notwithstanding, the Court must determine whether Defendants have demonstrated that Plaintiff has failed to state a cognizable Monell claim.  In support of this claim, Plaintiff alleges that the officer Defendants "do not know what constitutes reasonable force or proper warrantless entry, arrest, seizure or search because of inadequate training and or tolerance by [the] County . . . or its Sheriff's Office."  SAC ¶ 49.  Plaintiff further alleges that the County has "no policy in place directing its law enforcement officers . . . to know when and how to make a warrantless entry into a residence, search a residence, seize, or arrest occupants," and has "failed to train its law enforcement officers in proper warrantless entry, search, seizure, and arrest, and particularly when to point their guns at individuals they encounter  and when to physically take persons into custody with force who are lawfully in their homes."  Id. ¶ 51.  Plaintiff asserts that "[s]aid lack of policy and failure to train has exposed those who are in compliance with the law to deprivations of their Fourth Amendment rights," id. ¶ 52, and that "the need to train officers in the constitutional limitations of warrantless entry, search, seizure, and arrest can be said to be "so obvious," that the failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights, id. ¶ 53.  Plaintiff further asserts that the "lack of adequate supervisorial training, and/or policies and procedures is so gross that it demonstrates the existence of an informal custom or policy of promoting, tolerating, and ratifying the continuing unlawful entries, seizures, searches and arrests by officers employed by the County. . . ."  Id. ¶ 55.  According to Plaintiff, the County's omissions and systemic failures caused its officers to believe that they have "unfettered discretion" to enter a private residence, search it, arrest its occupants and arbitrarily determine the amount of force to be used, and that complaints of improper conduct would not be properly investigated, with the foreseeable result that officers would likely cause the deprivation of rights that occurred in this case.  Id. ¶ 57.

Here, while Plaintiff has not alleged a pattern of similar violations demonstrating the County's deliberate indifference to his constitutional rights, Plaintiff has alleged sufficient facts that, if proven, may establish that the consequences of the County's failure to train were so "patently obvious" that the County can be held liable under § 1983 without proof of a preexisting pattern of violations.  Viewing the allegations in the SAC in the light most favorable to Plaintiff, the Court finds that he has stated a <u>Monell</u> claim that is plausible on its face.  It is plausible that the County's failure to train was so obviously deficient that the County could be subject to liability under § 1983 as a result of a single incident.  Accordingly, Defendants' motion to dismiss Plaintiff's <u>Monell</u> claim is DENIED.

### B. Motion to Strike

Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, Defendants move to strike Plaintiff's request for punitive damages against Sergeant Felix and Lieutenant Madigan.  Defs.' Mot. at 4-6, Dkt. 46-1.  In response, Plaintiff filed a statement of non-opposition.  Dkt. 48.

Under Federal Rule of Civil Procedure 12(f), a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f).  Although Plaintiff does not oppose Defendants' motion to strike, the Court finds that it is improper to strike Plaintiff's request for punitive damages against Sergeant Felix and Lieutenant Madigan under Rule 12(f).  See <u>Whittlestone, Inc. v. Handi–Craft Co.</u>, 618 F.3d 970, 971 (9th Cir. 2010) ("Rule 12(f) does not authorize a district court to strike a claim for damages on the ground that such damages are precluded as a matter of law."); <u>see also</u> <u>Martensen v. Koch</u>, 942 F.Supp.2d 983 (N.D. Cal. 2013) (denying a Rule 12(f) request to strike a request for punitive damages under <u>Whittlestone</u> ); <u>Finuliar v. BAC Home Loans Servicing, L.P.</u>, 2011 WL 4405659, at *14 (N.D. Cal. 2011) (same).  A Rule 12(f) motion is not a proper method to procure dismissal of all or part of a complaint. <u>Whittlestone</u>, 618 F.3d at 973-975; <u>see also</u> <u>Consumer Solutions REO, LLC v. Hillery</u>, 658 F.Supp.2d 1002, 1020 (N.D. Cal. 2009) (the proper medium for challenging the sufficiency of factual allegations in a complaint is through Rule 12(b)(6), not Rule 12(f)).

Where a motion is in substance a Rule 12(b)(6) motion, but is incorrectly denominated as a Rule 12(f) motion, a court may convert the improperly designated Rule 12(f) motion into a Rule 12(b)(6) motion.  <u>Hillery</u>, 658 F.Supp.2d at 1021 (treating a Rule 12(f) motion arguing that the complaint contained insufficient allegations to justify an award for punitive damages as a Rule 12(b)(6) motion).  Here, Defendants contend that the SAC does not allege sufficient facts to justify an award of punitive damages against Sergeant Felix and Lieutenant Madigan.  Thus, because Defendants challenge the sufficiency of the factual allegations in the SAC, the Court exercises its discretion and converts Defendants' unopposed Rule 12(f) motion to strike into a Rule 12(b)(6) motion to dismiss.  Because Plaintiff does not oppose Defendants' motion to strike, his claims for punitive damages against Sergeant Felix and Lieutenant Madigan are DISMISSED.

## IV.   <u>CONCLUSION</u>

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1.      Defendants' motion to dismiss is DENIED.

2.      Defendants' Rule 12(f) motion to strike Plaintiff's claims for punitive damages against Sergeant Felix and Lieutenant Madigan is DENIED.  The Court converts Defendants' Rule 12(f) motion to strike into a Rule 12(b)(6) motion to dismiss and DISMISSES Plaintiff's claims for punitive damages against Sergeant Felix and Lieutenant Madigan.

3.      This Order terminates Docket 46 and Docket 47.

IT IS SO ORDERED.

Dated: 2/10/2014

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge